RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  1/11/06
BY  OM

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JEFFREY TROY THOMAS AND JENNIFER THOMAS | CIVIL ACTION NO. 05-1263 |
| VERSUS | JUDGE DONALD E. WALTER |
| EMPIRE INDEMNITY INSURANCE COMPANY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #24] filed on behalf of defendants, Empire Fire and Marine Insurance Company, Texarkana Sugar Hill, Inc. and Joe Lee Stewart, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose this motion. For the reasons assigned herein, defendants' motion is **GRANTED**, and plaintiffs' claims are **DISMISSED**.

## STATEMENT OF THE CASE

Plaintiffs, Jeffrey Troy Thomas ("Thomas") and his wife, bring this action against defendants, Empire Fire and Marine Insurance Company, Texarkana Sugar Hill, Inc. ("Texarkana Sugar") and Joe Lee Stuart ("Stuart'), for injuries Thomas sustained when he rear-ended a 18-wheel tractor-trailer rig owned by Texarkana Sugar and operated by Stuart. Thomas asserts that Stuart's failure to activate his turn signal prior to the collision created a hazard Thomas could not reasonably avoid, thus making Stuart at fault. Defendants assert that plaintiffs cannot meet their burden of proof. This Court agrees.

In the early morning hours of September 26, 2003, Stuart was operating a 18-wheel tractor trailer rig owned by Texarkana Sugar in a northerly direction on Highway 71 near Ida, Caddo Parish, Louisiana. Defendants' Exh. 2, Deposition of Calvin C. Bennett ("Bennett depo."), pp. 6-9;

Complaint, ¶5. Thomas was simultaneously operating a 2000 Chevrolet Silverado truck in a northerly direction on Highway 71 south of the tractor trailer rig. Defendants' Exh. 1, Deposition of Jeffrey Troy Thomas ("Thomas depo."), p. 24; Complaint, ¶¶4, 5. Highway 71 is an unlit two-lane road located in a wooded area. Defendants' Exh. 2, Bennett depo., pp. 6, 8. The road has little to no shoulder. Id.; Defendants' Exh. 1, Thomas depo., pp. 27-28. The posted speed limit near the point of impact was reported as 55 miles per hour. Defendants' Exh. 1, Thomas depo., p. 27.[1] There is a hill approximately 800 feet south of the point of impact. See Defendants' Statement of Undisputed Fact ("SUF"), ¶3; see also Plaintiffs' Opp., p. 1.[2] Thomas did not observe the tractor trailer rig until he reached the crest of the hill. Defendants' Exh. 1, Thomas depo., p. 28.

Thomas initially believed that the rig was not stopped but was "going slower than he should be" so Thomas started to pass the rig. Id. at pp. 29, 32-33. Although there is no sworn testimony of Stuart presently before this Court, it is undisputed that prior to the collision Stuart had slowed with the intention of turning left into the parking lot of an abandoned convenience store off of Highway 71. Defendants' SUF, ¶2; Plaintiffs' Statement of Material Facts ("SMF"), ¶6.[3] Thomas looked to the southbound lane to pass Stuart but saw a car traveling south. Defendants' Exh. 1, Thomas depo., pp. 29, 33. Once Thomas returned to the northbound lane of travel and discovered

---

[1] The accident report referenced by Thomas in his deposition is not attached to either defendants' exhibits in support of their Motion for Summary Judgment or plaintiffs' Opposition. However, in his deposition, Thomas agrees that the accident report shows that the posted speed is 55 at the point where the accident occurred. Defendants' Exh. 1, Thomas depo., p. 27.

[2] Pursuant to Local Rule 56.2, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

[3] See Note 2.

2

that Stuart was "pretty much stopped," Thomas applied his brakes and veered to the right in an attempt to avoid the rig via the shoulder. Id. at pp. 29, 35. Thomas' attempt failed and a rear-end collision between Thomas' Silverado and the rig operated by Stuart ensued. Id. According to Thomas and Thera Newman ("Newman"), a passenger in the southbound vehicle, Stuart had not activated his turn signal prior to the collision. Id. at p. 30; Defendants' Exh. 3, Deposition of Thera Newman ("Newman depo."), p. 10. Thomas also testified in his deposition that he saw running lights on the back of the rig but did not see any brake lights being activated on the rig prior to impact. Defendants' Exh. 1, Thomas depo., p. 30.

After the collision, despite Thomas's truck being attached to the rig, Stuart continued north and started his left-hand turn into the convenience store parking lot. Id. at p. 43; Defendants' Exh. 3, Newman depo., pp. 18, 20, 22-23. Newman had directed the driver of the southbound vehicle, Gary Thomas, to stop because of the collision. Defendants' Exh. 3, Newman depo., pp. 7, 20-21. Gary Thomas pulled the southbound vehicle into the convenience store parking lot. Id. at p. 20.

When Newman saw that the rig was dragging the Silverado truck, she ran toward the front of the rig, started yelling and waving her arms and told the driver of the rig to stop. Id. at p. 22. At that point, Stuart stopped his rig. Id. Newman estimated that Thomas' truck was dragged approximately 15 feet while Calvin Bennett ("Bennett"), the Caddo Parish Sheriff's Deputy investigating the accident, estimated that Thomas' truck was dragged approximately 100 feet. Id. at pp.22-23; Defendants' Exh. 2, Bennett depo., pp. 15, 18. No citations were issued as a result of the collision. Defendants' Exh. 2, Bennett depo., p. 21.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless controverted. . . ." Local Rule 56.2.

## LAW AND ANALYSIS

Thomas asserts claims against defendants pursuant to Louisiana Civil Code articles 2315 and 2320 (respondeat superior). In particular, Thomas alleges that Stuart was at fault, or partially at fault, for causing the accident at issue because Stuart failed to activate his left turn signal prior to the collision. According to Thomas, had Stuart used his turn signal, no collision would have taken place because Thomas:

> would have been aware that [Stuart's] vehicle was most likely traveling very slowly or stopped. [Thomas] would have known that passing [Stuart's] vehicle would not be possible. He would have realized that his only course of action was to immediately slow his vehicle.

Plaintiffs' Opp., p. 3. This Court finds that Thomas' assertions are negated by his own deposition testimony. Thomas stated that he initially believed that the rig was "going slower than he should be" without the benefit of the turn signal being activated. See Defendants' Exh. 1, Thomas depo., pp. 29, 32-33. Further, Thomas knew he could not pass the rig when he saw the southbound vehicle. Id.

A motorist's duty of care includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards. Morris v. Flores, 840 So.2d 1257, 1261 (La. App. 2 Cir. 2003). A

5

motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. Id. Under Louisiana law, a motorist has a duty not to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle, the traffic upon and the condition of the highway. La. R.S. 32:81(A). A following motorist in a rear-end collision is presumed to have breached this duty and is, therefore, presumed negligent. Mart v. Hill, 505 So.2d 1120, 1123 (La. 1987). To avoid liability, the following motorist must prove a lack of fault by establishing that he had his vehicle under control, closely observed the lead vehicle and followed at a safe distance under the circumstances. Morris, 741 So.2d at 1262. The following motorist may also avoid liability by showing that the lead motorist negligently created a hazard that he could not reasonably avoid. Id.

In the case sub judice, Thomas is the following motorist because he came from behind and rear-ended the rig operated by Stuart. According to Thomas, Stuart was operating the rig at a very slow rate of speed and failed to activate his turn signal. Thomas admits that he noticed the rig when Thomas crested the hill. Thomas also admits that he noticed the rig was traveling at a slow rate of speed. Rather than slow down himself, Thomas attempted to pass the rig - a maneuver Thomas could not complete due to oncoming traffic.

Both Thomas and Stuart had to exercise a high degree of care when executing their maneuvers. Pursuant to La. R.S. 32:104, a left-turning motorist is required to signal his intent to turn at least 100 feet from the turning point and to take steps to ensure that the maneuver can be made without endangering a passing vehicle. Stuart, as a left-turning motorist, had the right to assume that a following motorist would observe all the duties imposed upon him by law and common sense. Duncan v. Safeway Insurance Company of Louisiana, 799 So.2d 1161, 1164 (La. App. 2 Cir. 2001).

On the other hand, the driver of the following vehicle must be alert to the actions of motorists preceding him on the highway. Duncan v. Safeway Insurance Company of Louisiana, 799 So.2d 1161, 1164 (La. App. 2 Cir. 2001). In particular, the driver of the passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the highway, the passing can be completed with safety. Id.

To defeat summary judgment, Thomas must show that there is a genuine issue of material fact as to whether he is free from fault or whether Stuart was at fault for failing to activate his turn signal. Thomas has clearly failed to show that he is free from fault. The evidence before this Court shows that rather than decreasing his speed upon seeing the rig, Thomas assumed he could complete a passing maneuver. When Thomas' passing maneuver was thwarted by oncoming traffic, it was too late to avoid a collision.

As to whether Stuart was at fault for allegedly failing to activate his turn signal, the evidence shows that after the collision, Stuart proceeded approximately 100 feet and "then initiated his left hand turn." See Defendants's SUF, ¶11; Plaintiffs' SMF, ¶7.[4] As stated above, La. R.S. 32:104 does not require a motorist to activate his turn signal until the driver is 100 feet from the turning point. Even if Stuart failed to activate his signal, he did not violate his duty as a left turning motorist because the evidence shows he was at least 100 feet from the turning point at the time of impact. Further, as discussed above, Thomas' assertions show that even if Stuart was less than 100 feet from the turning point, activating the rig's turn signal would have served no purpose. As noted by defendants, "the risk to Mr. Thomas was the same regardless of whether Mr. Stuart had his turn signal activated." Defendants' Mem. in Supp. of Motion for Summary Judgment, p. 7.

---

[4] See also Note 2.

There is no evidence before this Court showing that Stuart was free from fault or that Stuart's actions caused the accident at issue. Simply put, plaintiffs have failed to defeat summary judgment.

## CONCLUSION

For the reasons stated above, defendants' motion is **GRANTED** and plaintiffs' claims are **DISMISSED**.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE